## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT GREENEVILLE

| | | |
|---|---|---|
| CHAD ANTHONY BENFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:22-cv-144 |
| | ) | |
| v. | ) | Judge Travis R. McDonough |
| | ) | |
| ERIC TRIVETTE and | ) | Magistrate Judge Cynthia R. Wyrick |
| MITZIA WADDILL, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiff Chad Anthony Benfield filed a pro se complaint under 42 U.S.C. § 1983 concerning events that transpired while Plaintiff was incarcerated at the Carter County Detention Center (hereinafter "Carter County Jail" or "Jail") (Doc. 2). After screening the complaint, the Court permitted Plaintiff to proceed on his claims against (1) Defendant Eric Trivette "for cruel and unusual punishment and the violation of equal protection principles" and (2) Defendant Mitzia Waddill "for the denial of medical care" (Doc. 3, at 2). Before the Court are Defendants Trivette and Waddill's separate motions for summary judgment (Docs. 34, 43). Plaintiff responded to the motions (Docs. 41, 47), and Defendant Trivette filed a reply to Plaintiff's response opposing his motion for summary judgment (Doc. 42), to which Plaintiff filed a sur-reply (Doc. 45). Upon consideration of the parties' pleadings, the summary judgment evidence, and the applicable law, the Court finds that summary judgment should be granted in favor of Defendants.

## I. BACKGROUND

On August 9, 2017, Plaintiff was arrested for the first-degree murder of his neighbor during the commission of a burglary and placed in custody at the Carter County Jail (Doc. 2, at 4[1]; Doc. 33, at 15-16, 56, 59–70, 80). Throughout Plaintiff's incarceration in the Jail, inmates used an electronic kiosk system to communicate needs, requests, and grievances (Doc. 33, at 23–24, 58). Handwritten forms are also available, but inmates "file basically everything" on the kiosk (*Id*. at 24). Plaintiff was familiar with electronic kiosk systems from the time he spent in the South Carolina penal system and found the Carter County Jail's kiosk system simple to use (*Id*. at 21–23).

The Carter County Jail's Inmate Handbook is available on the kiosk system (*Id*. at 27–28, 30, 58–59). Plaintiff acknowledged receipt of the Inmate Handbook on August 17, 2017 (*Id*. at 2). It includes all the Jail's policies and procedures, including the process to use when filing a request or grievance (*Id*. at 28–29, 58–59).

Requests and grievances are separate matters that are defined separately and have separate procedures in the Inmate Handbook (*Id*. at 3–5, 58–59). The "request" procedure in the Carter County Jail is utilized "(w)hen an inmate is requesting information, answers to questions, or responses to a (prior) request. . ." (*Id*. at 5). After initially directing a request to a corrections officer, if the officer is unable to assist, a formal request may be issued through the kiosk machine under the inmate's account (*Id*.).

Separate from requests, inmates may use the kiosk machine to file grievances (*Id*.). The grievance procedure requires:

---

[1] Because Plaintiff "signed his complaint under penalty of perjury" it "carries the same weight as would an affidavit for the purposes of summary judgment." *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008).

The grievance form button is located on the menu page of the kiosk machine. The inmate must completely fill out the form and submit it electronically through the kiosk machine. Upon receipt of the grievance, the incident will be assigned to an officer for investigation and the findings forwarded to the Jail Administrator. The inmate should receive a response within ten (10) working days. If the grievance cannot be satisfactorily answered within ten days, he/she will receive a temporary response at that time. This response will explain the delay. When this occurs, the inmate will receive a response within thirty (30) days of submitting the grievance form.

(*Id.*). The grievance procedure also includes an appeal process, which provides:

If an inmate is not satisfied with the response given, then the inmate may file a grievance appeal to the Sheriff or his designee within three (3) days of receipt of a response. The appeal can be filed electronically through the kiosk machine. The Sheriff or his designee has fifteen (15) days from the receipt of the appeal to reply to your appeal. The response from the Sheriff shall be the final step in the appeals process. The Sheriff will review all appeals of grievances and that response will be final.

(*Id.*).

Plaintiff filed numerous requests and grievances while housed at the Jail, but he never appealed any grievance he filed (*Id.* at 29, 37, 43–47, 59, 60).

From August 9, 2017, through December 1, 2017, Plaintiff was housed in general lockup and placed in "yellow chains" when he left his cell (Doc. 2, at 4). The term "yellow chains" refers to five-foot-long chain, yellow in color, that wraps around the inmate's waist and handcuffs one wrist close to the waist chain, thus leaving the other arm free "to use (the) phone and do . . . other things with" (Doc. 2, at 4; Doc. 33, at 55–56). From December 1, 2017, through March 26, 2019, Plaintiff was housed in a protective-custody unit where the yellow chains were not used (Doc. 2, at 4; Doc. 33, at 47–48). But on March 26, 2019, Plaintiff was moved to general-population lockup (Doc. 2, at 4; Doc. 33, at 48). And between March 26, 2019, and June 4, 2022, Plaintiff was placed in yellow chains anytime he was outside of his cell (Doc. 2, at 4, 5). Defendant Eric Trivette served as the Jail Administrator during the time

Plaintiff was placed in yellow chains and was the person who ordered their use (Doc. 2, at 4–5; Doc. 33, at 55).[2]

The yellow chains did not prevent Plaintiff from checking his mail, filling out requests, watching television, walking around, or "do(ing) whatever (he) need(ed) to do" (Doc. 33, at 51–52). In fact, he applied for a trustee job during the time he was in yellow chains, as he could mop and sweep while wearing the chains (*Id*. at 42). Neither was he prevented from performing normal daily functions, such as basic bodily hygiene, when he was in the yellow chains (*Id*. at 49). Plaintiff never suffered physical injury on any part of his body as a result of wearing yellow chains beyond bruises "here and there" for which he did not seek medical care (*Id*. at 40).

Although the yellow chains did not cause Plaintiff any physical injury, they caused Plaintiff mental distress because he thought he was "singled out" for their use without any legitimate reason (Doc. 2, at 4–5; Doc. 33, at 40, 52). On April 21, 2021, Plaintiff filed a request to be removed from the yellow chains, stating that he had been in the Jail for almost four years with no problems and that no other individuals with murder charges had to wear them (Doc. 33, at 7). Defendant Trivette responded that Plaintiff would have to remain in yellow chains until Plaintiff's "charges are either dropped or lowered" (*Id*.). On December 11, 2021, Plaintiff was found guilty of criminally negligent homicide (Doc. 2, at 4; Doc. 33, at 16). The following day, December 12, 2021, Plaintiff submitted a request asking to be removed from the yellow chains since his murder charge had been reduced (Doc. 33, at 6). Defendant Trivette responded to that request stating that "homicide still carries the yellow chains" (*Id*.). And although neither Plaintiff nor Jail officials could find a record of it, Plaintiff maintains he also filed an electronic

---

[2] Matthew Patterson is the current Jail Administrator (Doc. 33, at 58).

4

grievance regarding the yellow chains on December 12, 2021, to which no one ever responded (*Id*. at 33-34, 59, 70-71, 80).

Other prisoners with murder charges were not required to wear the yellow chains (Doc. 2, at 4; Doc. 33, at 71, 81).  And according to Plaintiff, the Inmate Handbook stated that inmates could be placed in yellow chains if they "cause(d) a problem" or committed a disciplinary infraction (Doc. 33, at 28).  Plaintiff did not have any disciplinary charges at the time the chains were used[3] (*Id*. at 43).

On February 17, 2022, Plaintiff filed a request asking for the chains to be removed (*Id*. at 8).  The response stated that the decision was up to the Jail Administrator (*Id*.).  Plaintiff's sentence for criminally negligent homicide expired on May 20, 2022, but he was not released from incarceration or from the use of the yellow chains, as he was indicted on 1 count of sexual exploitation of a minor and 177 counts of attempted exploitation in November 2020 (*Id*. at 17, 18, 70-71, 80).  Instead, Plaintiff remained in the yellow chains when he was outside of his cell through June 4, 2022, when Defendant Trivette decided to stop using the yellow chains on inmates in lieu of other security measures (Doc. 2, at 5; Doc. 33, at 56).

Plaintiff also contends that he was denied adequate medical and mental health care in the Carter County Jail by "head nurse Mitzia Waddill" (Doc. 2, at 6).  Specifically, he maintains that she (1) took him off his allergy medication; (2) refused to give him proper "mental health" medication; and (3) denied him access to prescription glasses (*Id*.).

Plaintiff had voluntarily stopped taking all mental health medications prior to his release from prison in South Carolina in 2016 (Doc. 33, at 14), and at the time he was initially

---

[3] In January 2023, Plaintiff was charged with "delivery of meth, delivery of Schedule III, and introduction of contraband" related to Plaintiff's alleged effort to bring contraband into the Jail (Doc. 33 pp. 19-20, 69-70, 80).

incarcerated in the Carter County Jail, Plaintiff was not on any medications for mental health conditions (Doc. 43-1, at 2). But Plaintiff was started on medication for his mental health issues in 2018 or 2019, and he continues to receive such medication (Doc. 43-2, at 5–17, 19–20). Plaintiff has not submitted any medical requests or grievances relating to his mental health medications since 2019 (Doc. 43-1, at 3; Doc. 43-2, at 20).

On June 15, 2020, Plaintiff complained of sinus pain and pressure and was prescribed medications by the jail's nurse practitioner for five days to treat that issue (Doc. 43-1, at 2). On September 7, 2020, Plaintiff submitted a medical request for allergy medicine that was allegedly no longer on commissary, and Defendant Waddill determined the medicine was available on commissary and advised Plaintiff of same (*Id.*). Then on October 8, 2020, Plaintiff submitted a request relating to the allergy medication and was advised that he needed to fill out a sick call to be seen for that (Doc. 33, at 7, 90). After October 2020, Plaintiff did not file any additional medical requests either asking to be seen for allergy problems or indicating that he could not afford to purchase allergy medications through commissary (Doc. 43-1, at 2; Doc. 43-2, at 4).

On August 31, 2017, Plaintiff submitted a medical request stating that he did not have his prescription glasses and that he was having bad headaches without them (Doc. 43-1, at 3). Defendant Waddill advised Plaintiff to have someone bring them to the jail and that he would be provided with them (*Id.*). Plaintiff did not submit any additional requests relating to glasses or eye issues until after this lawsuit was filed (*Id.*). On May 24, 2023, Plaintiff made a request to see an eye doctor to obtain prescription glasses (*Id.*). After he was able to make payment arrangements, an appointment was made for him, and he obtained prescription glasses (*Id.*).

6

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper only when the pleadings and evidence, viewed in a light most favorable to the nonmoving party, illustrate that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a),(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  To establish an entitlement to summary judgment, the moving party must demonstrate that the nonmoving party cannot establish an essential element of his case for which he bears the ultimate burden of proof at trial.  *Celotex*, 477 U.S. at 322.  Once the motion is properly supported with competent evidence, the nonmovant must show that summary judgment is inappropriate by setting forth specific facts showing there is a genuine issue for trial.  *Id.* at 323.  That is, to successfully oppose a motion for summary judgment, "the non-moving party . . . must present sufficient evidence from which a jury could reasonably find for him."  *Jones v. Muskegon Cnty.*, 625 F.3d 935, 940 (6th Cir. 2010).

At summary judgment, "(t)he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  But "(w)hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  Once the court has "determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the record*, . . . (the ultimate decision becomes) . . . a pure question of law."  *Id.* at 381 n.8 (emphasis in original).  But if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," then there is a genuine dispute as to a material fact.  *Anderson*, 477 U.S. at 248.  If no proof is presented, however, the Court does not presume that the

nonmovant "could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n.*, 497 U.S. 871, 889 (1990)).

## III.    ANAYLSIS

Defendant Trivette maintains that he is entitled to summary judgment because (1) Plaintiff failed to properly exhaust his claims prior to filing suit; (2) Plaintiff's allegations are not supported by the undisputed material facts and fail as a matter of law; and (3) some of Plaintiff's claims are time-barred (Doc. 34, at 1–2).  Alternatively, Defendant Trivette claims that Plaintiff's lawsuit should be dismissed because Defendant Trivette is entitled to qualified immunity (*Id*. at 2).  Defendant Mitzia Waddill seeks summary judgment on the grounds that (1) Plaintiff failed to exhaust his claims; (2) his claims against her are time-barred; and (3) the undisputed facts demonstrate that she did not violate Plaintiff's constitutional rights (Doc. 43).  As set forth below, this case may be resolved on the basis of Defendants' affirmative defenses.

### A.    Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides that "(n)o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The requirements of exhaustion are not set out in the PLRA.  Rather, to satisfy the exhaustion requirement, an inmate must properly complete the grievance procedures put forward by his correctional institution, including any procedural rules and deadlines.  *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).  To properly exhaust his claims, a prisoner must utilize every step of the prison's procedure for resolving the grievance and follow the "'critical procedural rules'" in a manner that allows prisoner officials to review and, where necessary, correct the issues set forth in the grievance "'on the

8

merits.'" *Troche v. Crabtree*, 814 F.3d 795, 798 (6th Cir. 2016) (quoting *Woodford*, 548 U.S. at 81, 95)).

Moreover, exhaustion is mandatory, regardless of the type of relief sought, or whether such relief can be granted through the administrative process. *See Ross v. Blake*, 578 U.S. 632, 641 (2016). Therefore, "(e)xhaustion is required even if the prisoner subjectively believes the remedy is not available, . . . . and 'even where (the prisoners) believe the procedure to be ineffectual or futile. . . ." *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 222 (6th Cir. 2011) (internal citations and citations omitted).

Failure to exhaust is an affirmative defense for which Defendants bear the burden of proof. *Surles v. Andison*, 678 F.3d 452, 458 (6th Cir. 2012). Accordingly, when defendants in a prisoner civil rights action move for summary judgment on exhaustion grounds, they "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Id.* at 455-56 (citations and internal quotation marks omitted).

As relevant here, the Carter County Jail's formal grievance process requires inmates to (1) file a handwritten grievance form or electronically submit their grievances by using the "grievance form button" on the kiosk machine and (2) file an appeal of any unsatisfactory grievance response within three days of its receipt, to which the Sheriff will issue a final response (Doc. 33, at 5, 23–24).

Plaintiff has filled out a number of "requests" on the kiosk machine since his incarceration, including some requests related to the "yellow chains" issue that is one of the subjects of this litigation (Doc. 33, at 60, 6–8, 89–98). And while Plaintiff states that he did file a grievance regarding the use of yellow chains on December 12, 2021, there is no record of that

9

grievance (Doc. 33, at 33–34, 59). Even if it is disputed whether Plaintiff filed a grievance regarding the use of yellow chains, the evidence is undisputed that Plaintiff did not file any grievance appeals at all (Doc. 33, at 29, 37, 59, 60).

Plaintiff maintains that all grievance findings are forwarded to the Jail Administrator for final decision, so "what good would it have been to file a grievance to the jail administrator who makes a decision on the grievance" (Doc. 41, at 7-8). But, as noted above, Plaintiff's subjective belief that the grievance process was futile does not excuse his failure to properly utilize it. *Napier*, 636 F.3d at 222 (holding that "exhaustion is required. . . even where (the prisoners) believe the procedure to be ineffectual or futile . . . ." (citations omitted)). Accordingly, Defendants have met their burden of establishing the absence of any material fact regarding Plaintiff's failure to properly exhaust his administrative remedies prior to filing suit, and Defendants are entitled to summary judgment.

## B. Statute of Limitations

The Court otherwise notes that Plaintiff filed this action, at earliest, on November 7, 2022 (Doc. 2, at 7).[4] And Tennessee's one-year statute of limitations for personal injury actions applies to Plaintiff's § 1983 claims. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Tenn. Code Ann.* § 28-3-104. When the statute begins to run is an issue of federal law. *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007) (citations omitted). Under federal law, a cause of action accrues, and the limitations period begins to run, when the injury

---

[4] Plaintiff signed his complaint form on November 7, 2022 (Doc. 2, at 7). A prisoner "files" a document when it is submitted to prison officials for mailing. *See Houston v. Lack*, 487 U.S. 266, 273 (1988) (holding pro se prisoner's notice of appeal filed at moment of delivery to prison authorities for forwarding to district court). Under Sixth Circuit precedent, the date a plaintiff signed the document is typically deemed the date of handing it to the prison authorities for mailing. *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008). Therefore, the Court assumes Plaintiff filed his complaint on the date it was signed.

10

forming the basis of the claim is discoverable, s*ee Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991) (citing *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984)), or when the cause of action is complete, *Dibrell v. City of Knoxville, Tenn.*, 984 F.3d 1156, 1162 (6th Cir. 2021) (acknowledging that the "standard" rule starting limitations period is "when the plaintiff has a complete and present cause of action").

### a.  Yellow Chains

Plaintiff was in yellow chains at various points from August 9, 2017, through June 4, 2022.  And Plaintiff filed requests believing their use improper as early as April 2021 (Doc. 33, at 7).  But he did not file this lawsuit until November 7, 2022 (Doc. 2, at 7).  Therefore, all claims related to the use of yellow chains against Plaintiff prior to November 7, 2021, are time-barred, and Defendant Trivette is entitled to summary judgment as to those claims.

### b.  Medical Care

None of Plaintiff's requests for treatment for his mental health, medical, or eye conditions were submitted within one year of this lawsuit being filed.  First, Plaintiff was not taking medications for mental health conditions when he was incarcerated in the Carter County Jail on August 9, 2017 (Doc. 33, at 14; Doc. 43-1, at 2).  Plaintiff did subsequently request mental health treatment later and was placed on medication for mental health conditions in 2018 (Doc. 43-1, at 2–3; Doc. 43-2, at 5–9).  Plaintiff admits that he has not sought any additional mental health treatment or submitted any request for mental health medications since 2020 (Doc. 43-2, at 25–26; *see also* Doc. 43-1, at 3).

Next, Plaintiff's last request related to allergy medicine occurred on October 8, 2020, and he was advised that he needed to fill out a sick call (Doc. 43-2, at 3–4).

Finally, Plaintiff made a medical request on August 31, 2017, related to his prescription glasses, and was instructed to have a family member bring them in (Doc. 43-1, at 3). Plaintiff did not submit any additional medical request until after this lawsuit was filed (*Id.*).

Accordingly, there is no genuine dispute that Plaintiff's medical, mental health, and prescription eyewear care claims are all barred by the statute of limitations, and, for this reason, Defendant Waddill is also entitled to summary judgment as to all claims against her.

## IV. CONCLUSION

Defendants have met their respective burdens of showing they would prevail at trial on the exhaustion issue. Additionally, Defendant Waddill is entitled to dismissal of all claims against her on statute of limitations grounds, and Defendant Trivette is entitled to partial summary judgment on statute of limitations grounds. Accordingly, Defendants' motions for summary judgment (Docs. 34, 43) will be **GRANTED**, and this action will be **DISMISSED**.

Finally, the Court **CERTIFIES** that any appeal from this decision would not be taken in good faith, and Plaintiff is **DENIED** leave to proceed *in forma pauperis* should he choose to appeal. *See* 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER**.

*/s/ Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**

12